IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH OSTRANDER,                          :
                                           :
                    Plaintiff,             :        CIVIL ACTION NO. 20-5227
                                           :
        v.                                 :
                                           :
TRANS UNION LLC and TRUIST BANK,           :
                                           :
                    Defendants.            :

## <u>MEMORANDUM OPINION</u>

Smith, J.                                                          July 30, 2021

This case is just one of approximately eighty cases filed by plaintiff's counsel in this district alone alleging violations of the Fair Credit Reporting Act ("FCRA") under similar facts and legal theories. The plaintiff here alleges that defendant Trans Union violated its obligations under the FCRA by failing to conduct a reasonable investigation into his dispute and reporting an account with a zero-dollar balance as "currently" past due. The plaintiff further alleges that defendant Truist Bank, a furnisher of information for purposes of the FCRA, also failed to conduct a reasonable investigation into his dispute and to delete or correct the allegedly inaccurate information. The defendants separately moved for judgment on the pleadings. They argue both that the plaintiff's claims are time-barred and that the weight of authority in this district holds that the credit information as reported and furnished by the defendants is neither inaccurate nor materially misleading as a matter of law when read in the context of the credit report as a whole. The plaintiff cross-moved for partial judgment on the pleadings.

The court agrees with several other courts in this district that have held that the pay status field of a credit report cannot be read in isolation. When read in that context, the information furnished and reported by the defendants here was neither patently incorrect nor materially misleading. Accordingly, and as further discussed below, the court grants Trans Union's motion

for judgment on the pleadings as to the plaintiff's claims under sections 1681e(b) and 1681i. The court also grants judgment on the pleadings as to the plaintiff's claim against Truist under section 1681s-2(b). The plaintiff's partial cross-motion for judgment on the pleadings and request for leave to amend the complaint are denied.

## I.     PROCEDURAL HISTORY

The plaintiff commenced this action by filing a complaint on October 20, 2020. Doc. No. 1. On December 21, 2020, defendant Trans Union filed an answer to the complaint. Doc. No. 17. The court held an initial pretrial conference on January 4, 2021. Doc. No. 22. On January 11, 2021, defendant Truist Bank filed an answer to the complaint. Doc. No. 23. Trans Union filed a motion for judgment on the pleadings on January 29, 2021. Doc. No. 24.  On February 2, 2021, Trans Union filed an uncontested motion to stay discovery and vacate all future case deadlines pending resolution of its motion for judgment on the pleadings. Doc. No. 25. The court granted the motion to stay discovery and vacate future case deadlines on February 5, 2021. Doc. No. 27.

On February 19, 2021, Truist Bank filed a motion for judgment on the pleadings. Doc. No. 28. Trans Union filed a notice of supplemental authority on February 25, 2021. Doc. No. 30. The plaintiff filed a notice of adverse authority on February 25, 2021. Doc. No. 31. On March 25, 2021, the plaintiff filed an omnibus response in opposition to the defendants' motions for judgment on the pleadings and a partial cross-motion for judgment on the pleadings as to the issue of accuracy. Doc. No. 41. On April 8, 2021, Trans Union and Truist Bank filed reply briefs in further support of their motions for judgment on the pleadings. *See* Doc. Nos. 44, 45. The plaintiff filed a reply in support of its motion for judgment on the pleadings on April 9, 2021. Doc. No. 46. On April 15, 2021, the court held oral argument on the defendants' motions for judgment on the pleadings and the plaintiff's cross-motion for judgment on the pleadings. Doc. No. 47. The plaintiff filed a

supplemental memorandum sur oral argument on April 22, 2021. Doc. No. 48. On May 14, 2021, the defendants filed a joint response to the plaintiff's supplemental memorandum sur oral argument. Doc. No. 57. Trans Union filed a second notice of supplemental authority on July 8, 2021. Doc. No. 66. The plaintiff filed a notice of supplemental authority on July 27, 2021. Doc. No. 69. Trans Union filed a third notice of supplemental authority on July 28, 2021. Doc. No. 70.

## II.   FACTUAL BACKGROUND

The plaintiff, Joseph Ostrander, opened an account with Truist Bank on March 1, 2010, and on December 1, 2013, the account was closed. *See* Compl. at ¶ 8, Doc. No. 1; *Id.*, Ex. B at ECF p. 3. At the time the account was closed, it reported a pay status of "Account 60 Days Past Due Date" and a balance of zero dollars. Compl. at ¶¶ 8–9; Ex. B at ECF p. 3.

On August 14, 2018, the plaintiff, through counsel, mailed a dispute letter to Trans Union. Compl. at ¶ 11. Truist Bank subsequently verified the account information as accurate and instructed Trans Union to continue reporting the same credit information. *Id.* As a result, Trans Union continued to report the same credit information, which is reflected in the latest available credit report of October 22, 2018. *Id.*; *see also id.*, Ex. B. The relevant portion of the credit report appears as follows:

| Date Opened:<br>03/01/2010 | Responsibility:<br>Individual Account | Account Type:<br>Installment Account | Loan Type:<br>AUTOMOBILE |
|---|---|---|---|
| Balance:<br>$0 | Date Updated:<br>12/01/2013 | Payment Received:<br>$13,922 | Last Payment Made::<br>12/01/2013 |
| High Balance:<br>$25,683 | Pay Status:<br>>Account 60 Days Past Due Date< | Terms:<br>$554 per month, paid Monthly for 63 months | Date Closed:<br>12/01/2013 |

Maximum Delinquency of 60 days in 12/2013

Remarks: CLOSED

Estimated month and year that this item will be removed: 09/2020

| | 11/2013 | 10/2013 | 09/2013 | 08/2013 | 07/2013 | 06/2013 | 05/2013 |
|---|---|---|---|---|---|---|---|
| Rating | 30 | 30 | X | X | X | X | X |

| 04/2013 | | 03/2013 | 02/2013 | 01/2013 | 12/2012 | 11/2012 | 10/2012 |
|---|---|---|---|---|---|---|---|
| X | Rating | X | X | X | X | OK | 30 |

| 09/2012 | 08/2012 | | 07/2012 | 06/2012 | 05/2012 | 04/2012 | 03/2012 |
|---|---|---|---|---|---|---|---|
| 30 | 30 | Rating | 30 | X | OK | 30 | X |

| 02/2012 | 01/2012 | 12/2011 | | 11/2011 | 10/2011 |
|---|---|---|---|---|---|
| X | X | X | Rating | X | OK |

Compl., Ex. B.

As shown above, the credit report shows that the plaintiff opened the account on March 1, 2010. *Id.* The report also shows that the account has a zero-dollar balance and that the last payment received was $13,922. *Id.* The last payment was made on December 1, 2013, which is the same day that the account was last updated and when it was closed. *Id.* The report lists a pay status of "Account 60 Days Past Due Date" and the following remark: "Maximum Delinquency of 60 days in 12/2013." *Id.* The report also lists September 2020 as the "[e]stimated month and year that this item will be removed." *Id.*

On October 20, 2020, the plaintiff sued Trans Union and Truist Bank for violating the Fair Credit Reporting Act (FCRA). The plaintiff alleges that Trans Union violated section 1681i(a)(1)(A) of the FCRA by failing to conduct a good faith and reasonable investigation into his notice of dispute. Compl. at ¶ 27. He alleges that, although it was fully satisfied, his account inaccurately reported that it was "currently" past due. *Id.* at ¶ 30. Despite being on notice of this inaccuracy, the plaintiff alleges, Trans Union continued to report inaccurate information. *Id.* at ¶¶ 31–32. The plaintiff also alleges that Trans Union is currently violating section 1681e(b) of the FCRA by failing to follow reasonable procedures and ensure maximum possible accuracy. *Id.* at ¶ 33.

The plaintiff further alleges that Truist Bank violated section 1681s-2(b) of the FCRA by failing to conduct a good faith and reasonable investigation into his dispute and failing to delete or correct the allegedly inaccurate information. *Id.* at ¶ 37. In particular, had Truist Bank conducted a proper investigation into his dispute, the plaintiff contends, it would have discovered that the information it was reporting to Trans Union was inaccurate and corrected the account to report a "current status." *Id.* Finally, the plaintiff alleges that he has suffered actual harm because the negative tradelines on his credit report were viewed by third parties, resulting in two denial letters. *Id.* at ¶¶ 38–39, Exs. C, D.

### III.    DISCUSSION

#### a.    <u>Standard of Review – Motion for Judgment on the Pleadings</u>

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings is a procedural hybrid of a motion to dismiss and a motion for summary judgment." *Gaughen v. United States*, Civ. A. No. 1:09-CV-2488, 2011 WL 292019, at *1 (M.D. Pa. Jan. 27, 2011). In

considering such a motion, the court ordinarily considers "the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents, and matters of public record." *Tristate Antiques v. Fed. Ins. Co.*, Civ. A. No. 17-1823, 2017 WL 4539287, at *1 (E.D. Pa. Oct. 11, 2017). Judgment on the pleadings is only warranted where "the plaintiffs would not be entitled to relief under any set of facts that could be proved." *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 220 (3d Cir. 2001).

"A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)); *see also Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004) (explaining that there is "no material difference in the applicable legal standards" for 12(b)(6) motions and 12(c) motions for judgment on the pleadings). As with a Rule 12(b)(6) motion, the court must therefore "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party," and cannot grant the motion "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quoting *In re Asbestos Prods. Liability Litig. (No. VI)*, 822 F.3d 125, 133 n.6 (3d Cir. 2016)).

b.  **Trans Union LLC's Motion for Judgment on the Pleadings**

i.  *Judgment on the pleadings as to Trans Union's statute of limitations defense is denied.*

In its motion for judgment on the pleadings, Trans Union argues that the plaintiff's § 1681i claim is barred by the FCRA's two-year statute of limitations. *See* Trans Union LLC's Mem. in

Supp. of its Mot. for Judgment on the Pleadings ("Trans Union Mem.") at 13, Doc. No. 24-1 (citing

15 U.S.C. § 1681p). Specifically, it contends that because it mailed the plaintiff the results of its

investigation on August 24, 2018, the complaint, filed on October 20, 2020, is untimely. *Id.* at 13–

14. Even assuming the plaintiff did not receive the investigation results shortly after August 24,

2018, it argues, he would have discovered Trans Union's violation around mid-September 2018,

after the statutory reinvestigation period had elapsed without a response from Trans Union. *Id.* at

14. In response, the plaintiff appears to argue that the complaint is timely because the statute of

limitations does not begin to run until the plaintiff discovers that the reinvestigation is

unreasonable. *See* Pl.'s Omnibus Resp. in Opp. to Defs.' Mots. For Judgment on the Pleadings and

Pl.'s Partial Cross-Mot. for Judgment on the Pleadings ("Pl.'s Mem.") at ECF pp. 13–14, Doc. No.

41. The court will deny the motion for judgment on the pleadings as to Trans Union's statute of

limitations argument for the reasons set forth below.

> The FCRA's two-year statute of limitations provides that:
>
> An action to enforce any liability created under this subchapter may be brought in any
> appropriate United States district court, without regard to the amount in controversy, or in
> any other court of competent jurisdiction, not later than the earlier of—
>
> (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for
> such liability; or
> (2) 5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p.

Here, it is unclear from the pleadings whether the plaintiff is arguing that Trans Union

failed to conduct a reinvestigation at all, or whether it is claiming that the reinvestigation Trans

Union did perform was unreasonable.[1] *See, e.g.*, Compl. at ¶ 14 (stating that "Trans Union did not

---

[1] Although the plaintiff clarifies in his opposition brief that he is arguing that Trans Union's reinvestigation was "not reasonable," *see* Pl.'s Mem. at ECF p. 13, the court will not consider this clarification because a "[b]rief in [o]pposition is not a pleading." *Hassel v. Centric Bank*, Civ. A. No. 1:19-CV-02081, 2020 WL 8091138, at *3 (M.D. Pa. Nov. 18, 2020); *cf. Bilby v. Hoffman*, Civ. A. No. 3:14-CV-02470, 2016 WL 859672, at *1 n.1 (M.D. Pa. Jan. 27, 2016) ("To the extent [the plaintiff] attempts to amend his pleading through his brief in opposition, it is 'axiomatic that the

provide a good faith investigation into the disputed [Truist Bank] account."); ¶ 29 (asserting that "Trans Union did not conduct a good faith and reasonable investigation into Plaintiff's dispute."); ¶ 32 (alleging that "[i]f Trans Union had conducted this proper investigation they would have corrected or deleted the Plaintiff's account [information] that [was] inaccurate and misleading."). This distinction is important in determining whether the statute of limitations bars the plaintiff's claim. If the plaintiff's claim is that Trans Union failed to complete a reinvestigation at all, then the earliest the statute of limitations would have begun to run was September 21, 2018, which is five business days after the thirty-day statutory reinvestigation period would have elapsed. *See Chiarello v. Trans Union, LLC*, Civ. A. No. 2:17-cv-00513-AB, 2018 WL 4698846, at *3 (E.D. Pa. Oct. 1, 2018) (noting that credit reporting agency must complete reinvestigation within thirty days and provide written notice to plaintiff within five business days thereafter) (citing 15 U.S.C. §§ 1681i(a)(1)(A), 1681i(a)(6)(a)). Because the complaint was not filed until October 20, 2020, and the plaintiff should have become aware by September 21, 2018, of Trans Union's failure to complete a reinvestigation, the claim would be time-barred as of September 21, 2020.

If, on the other hand, the plaintiff's claim is not that Trans Union failed to conduct a reinvestigation at all, but that the one it did perform was unreasonable, then it is less clear that the statute of limitations bars his claim. Indeed, the date of the plaintiff's receipt of the reinvestigation results is not necessarily the same date the plaintiff discovered that the reinvestigation itself was unreasonable. This is because "inaccurate information in a credit report alone is not a violation of the FCRA: the FCRA is not a strict liability statute." *Andrews v. Equifax Info. Servs. LLC*, 700 F. Supp. 2d 1276, 1278 (W.D. Wash. 2010); *see also Guimond v. Trans Union Credit Info. Co.*, 45

---

complaint may not be amended by the briefs in opposition to a motion to dismiss.'") (quoting *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

F.3d 1329, 1333 (9th Cir. 1995) ("The FCRA does not impose strict liability . . . an agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures."). As such, "there are a dozen plausible reasons that a credit report may contain inaccurate information which would not be unlawful under the FCRA, and thus would not be a 'violation' within the meaning of the limitations period." *Andrews*, 700 F. Supp. 2d at 1278–79.

Here, like in *Andrews*, Trans Union "does not provide sufficient evidence that would tie the reports it generated to Plaintiff's discovery of the precise violations alleged in this lawsuit."[2] *Id.* at 1279. For example, it "does not explain how, from the information it sent, Plaintiff could discern whether the company's procedures in ensuring accuracy or reinvestigating [his] dispute were reasonable." *Id. But see Verkuilen v. Bus. Info. Grp., Inc.*, No. 14-C-400, 2016 WL 1677190, at *2 (E.D. Wis. Apr. 26, 2016) (observing that while "almost no consumers would ever have information about the reasonableness of a reporting company's own internal procedures," when a plaintiff "alerts the agency, twice, to a relatively simple error . . . and the company fails to correct it, such a plaintiff will have, *ipso facto*, reasonable grounds to allege that [the] agency's procedures are unreasonable.").

While the court has before it the plaintiff's credit report and reinvestigation results, *see* Trans Union LLC's Mot. for Judgment on the Pleadings ("Trans Union Mot."), Ex. 1, Doc. No. 24-2; Compl., Ex. B, there is no evidence, for example, as to whether the plaintiff was aware of Trans Union's procedures. *See Andrews*, 700 F. Supp. 2d at 1279. Perhaps equally importantly, there is insufficient evidence in the record that the plaintiff actually received the results of the

---

[2] Nor does the plaintiff, who only generally alleges that Trans Union failed to conduct a good faith and reasonable reinvestigation into his dispute. *See* Compl. at ¶¶ 14, 29, 32.

reinvestigation. Indeed, the court notes that Trans Union does not adequately support its claim that the plaintiff even received the results of the reinvestigation and thereby discovered the allegedly unreasonable reinvestigation. *See* Trans Union Mem. at 13 ("However, even if Plaintiff were to dubiously allege that he did not receive the August 24, 2018 Investigation Results, such allegation would not be sufficient to salvage his time-barred claim."); *see also* Andrews, 700 F. Supp. 2d at 1279.

In light of the statute of limitation's uncertain application under these two differing scenarios,  the court rejects Trans Union's statute of limitations defense at this early stage of the litigation. *See Tozer v. Darby PA*, Civ. A. No. 13-2005, 2014 WL 1378817, at *3 (E.D. Pa. Apr. 7, 2014) (holding that "[a] defendant may raise the statute of limitations as a defense by way of a motion for judgment on the pleadings under Rule 12(c), *if the statute's application is apparent on the face of the complaint*.") (emphasis added) (citing *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994); *Voicheck v. Ford Motor Co.*, Civ. A. No. 12-6534, 2013 WL 1844273, at *4 (E.D. Pa. May 2, 2013)); *see also Leithbridge Co. v. Greenwich Ins. Co.*, 464 F. Supp. 3d 734, 738 (E.D. Pa. 2020) ("Judgment on the pleadings is appropriate only when 'the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law.'") (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)).

As a final note, the court disagrees with Trans Union's contention that the statutory limitations period for § 1681i claims necessarily "is tied to the date of the consumer's <u>dispute</u> and the consumer reporting agency's statutory deadline to reinvestigate and respond to the dispute." Trans Union LLC's Reply in Supp. of Mot. for Judgment on the Pleadings and Resp. in Opp. to Pl.'s Partial Cross-Mot. for Judgment on the Pleadings ("Trans Union Reply") at 12, Doc. No. 45 (collecting cases). The court notes as an initial matter that the Third Circuit has not yet opined on

the FCRA's statute of limitations. *See Escobar v. Pa. Higher Educ. Assistance Agency Servs., LLC*, Civ. A. No. 17-4212, 2018 WL 1740364, at *4 (E.D. Pa. Apr. 11, 2018). Moreover, the cases cited by Trans Union in support of this argument are inapposite. *See* Trans Union Reply at 12.

For example, both *Lawrence v. Trans Union LLC*, 296 F. Supp. 2d 582 (E.D. Pa. 2003) and *Richardson v. Fleet Bank of Mass.*, 190 F. Supp. 2d 81 (D. Mass. 2001) relied on a prior version of 15 U.S.C. § 1681p that provided that "[a]n action to enforce any liability . . . may be brought . . . within two years from the date on which liability arises . . . ." *Mack v. Equable Ascent Fin., L.L.C.*, 748 F.3d 663, 665 (5th Cir. 2014). Because "liability under § 1681i does not attach until after the 30-day reinvestigation period expires," *Johnson v. Wells Fargo Home Mortg., Inc.*, No. 3:05-CV-0321-RAM, 558 F. Supp. 2d 1114, 1136 (D. Nev. 2008), both the *Lawrence* and *Richardson* courts tied the statute of limitations to the plaintiffs' notice of dispute, which triggers the reinvestigation period. *See Lawrence*, 296 F. Supp. 2d at 587. In *Lawrence*, for example, in which the plaintiff sent a dispute notice to the defendant in February 2001, the court held that "[l]iability . . . arose for [Trans Union]'s alleged failure to reinvestigate this dispute in March 2001, putting this claim well within the applicable two year statute of limitations." *Id.* Similarly, in *Richardson*, in which the complaint was filed on April 1, 1999, the court held that "the defendant's duty pursuant to section 1681i did not arise until it was notified of a dispute by the plaintiffs for the first time in September or November 1997. Accordingly, the FCRA's statute of limitations does not affect the viability of plaintiffs' claims." 190 F. Supp. 2d at 85. By contrast, the current version of § 1681p provides that an action must be commenced within two years of "the date of discovery by the plaintiff of the violation that is the basis for such liability." 15 U.S.C. § 1681p. Because the current version of § 1681p ties the two-year statutory limitations period to the

discovery of the violation that is the basis for liability rather than the date on which liability arises, the authorities cited by Trans Union are inapposite.

Additionally, *Chiarello* and *Verkuilen* involved claims that the defendants failed to complete a reinvestigation altogether and failed to perform the investigation and reinvestigation duties in a timely manner, respectively. *See Chiarello*, 2018 WL 4698846, at *3 ("Chiarello first argues that Defendants violated [the] FCRA by failing to investigate his assertions that his consumer report contained inaccurate child support information in Summer 2014."); *Verkuilen*, 2016 WL 1677190, at *2. As discussed above, it is unclear from the face of the pleadings whether the plaintiff is arguing that Trans Union failed to conduct a reinvestigation at all, or that it failed to conduct a reinvestigation that was reasonable. As such, these cases only support Trans Union's position if the plaintiff is asserting the former theory of liability.

Finally, the court is not persuaded by *Anthony v. Equifax Information Services, LLC*, No. 2:13-cv-01424-TLN-CKD, 2018 WL 2287954 (E.D. Cal. May 18, 2018), which Trans Union cites for the proposition that the statute of limitations begins to run when a plaintiff discovers *or should have discovered* the facts giving rise to the violation. *See* Trans Union Reply at 13. In that case, the court explicitly declined to opine on the merits of the defendant's statute of limitations defense as to the plaintiff's § 1681i claim, the claim at issue here. *See id.*, at *7. Accordingly, for the reasons discussed above, Trans Union's motion for judgment on the pleadings as to its statute of limitations defense is denied.[3]

> ii. *Judgment on the pleadings is granted as to the plaintiff's claims under § 1681e(b) and § 1681i because the information reported was neither patently incorrect nor misleading.*

---

[3] Because the court denies Trans Union's motion as to the statute of limitations argument, it does not address the plaintiff's argument regarding tolling.

Trans Union also moves for judgment on the pleadings as to the plaintiff's claims under sections 1681e(b) and 1681i, arguing that the plaintiff has failed to make a threshold showing that Trans Union reported any inaccurate information as required to state a claim under those provisions. *See* Trans Union Mem. at 4. It argues that, when the credit report is viewed as a whole, it is not possible that a creditor would be misled into believing that the plaintiff is currently past due on his account. *See id.* at 8. Moreover, even if the plaintiff was correct that its reporting was inaccurate, the plaintiff has failed to plead actual harm. *Id.* at 11. The plaintiff responds that the court should follow the recent decision of *Smith v. Trans Union, LLC*, Civ. A. No. 20-4903, 2021 WL 1061213 (E.D. Pa. Mar. 19, 2021), in which Judge Kenney, an esteemed judge of this court, denied Trans Union's motion for judgment on the pleadings in a nearly identical case. *See* Pl.'s Mem. at ECF pp. 3–4. He also argues that accuracy is a question for the jury and that the cases cited by Trans Union are distinguishable on the ground that those cases involved accounts that were transferred rather than paid off. *See id.* at ECF p. 9, Pl.'s Reply to Trans Union's Resp. to Pl.'s Cross-Mot. ("Pl.'s Reply") at 5, Doc. No. 46. The court will grant Trans Union's motion for judgment on the pleadings for the reasons discussed below.

To state a claim under §§ 1681e(b) and 1681i, the plaintiff must first establish that the information provided by the credit reporting agency—here, Trans Union—was inaccurate. *See Becker v. Early Warning Servs., LLC*, Civ. A. No. 19-5700, 2020 WL 2219142, at *8 (E.D. Pa. May 7, 2020) ("In evaluating a claim under section 1681i, a court must answer the same threshold inquiry as it does when evaluating a claim under Section 1681e(b): Does the plaintiff allege a factual inaccuracy?") (citing *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 904 n.9 (3d Cir. 2011) (per curiam)); *see also LeBoon v. Equifax Info. Servs., LLC*, Civ. A. No. 18-1978, 2020 WL 610450, at *5 (E.D. Pa. Feb. 7, 2020) (listing "inaccurate information was included on the

consumer's credit report" as one element "[a] consumer asserting a violation of Section 1681e(b) must plead") (citing *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010)).

The Third Circuit has stated that "[a] report is inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse[]' effect.'" *Schweitzer*, 441 F. App'x at 902 (quoting *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)). Under this standard, "a consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression.'" *Id.* (quoting *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 148 (4th Cir. 2008)). Although the question of whether information that is "technically correct" is materially misleading is generally a matter for the jury, *Bibbs v. Trans Union LLC*, Civ. A. No. 20-4514, 2021 WL 695112, at *4 (E.D. Pa. Feb. 23, 2021), "where . . the parties provide the reported information in dispute and the court determines only one reasonable interpretation of the report exists, a court may determine the accuracy of the report as a matter of law." *Samoura v. Trans Union LLC*, Civ. A. No. 20-5178, 2021 WL 915723, at *4 (E.D. Pa. Mar. 10, 2021).

In determining whether technically correct information on a credit report is misleading, courts consider the credit report in its entirety rather than a single isolated field. *See Schweitzer*, 441 F. App'x at 900–01 (holding that mortgage account that read "Over 120 Days Past Due" despite having been paid in full was accurately reported where additional notations such as "Account Paid/Zero Balance" and a "date of Last Activity" were included); *Bibbs*, 2021 WL 695112, at *7 (finding "the opinions confirming the accuracy of the tradelines in the context of the entire credit report more persuasive")*; Hernandez v. Trans Union LLC*, No. 3:19-cv-1987-RV/EMT, 2020 WL 8368221, at *3 (N.D. Fla. Dec. 10, 2020) (stating that "in determining if a

credit report is both true and unlikely to lead to misunderstanding, the report must be reviewed and considered in its entirety, instead of focusing on a single field of data" and collecting cases); *Settles v. Trans Union, LLC*, No. 3:20-cv-00084, 2020 WL 6900302, at *4 (M.D. Tenn. Nov. 24, 2020) (noting that "[i]n evaluating whether reported account information is materially misleading, courts assess the alleged inaccuracy in the context of the report as a whole" and collecting cases).

Reading the plaintiff's credit report in its entirety, the court finds that Trans Union's reporting of the plaintiff's account is not materially misleading as a matter of law. Although Trans Union relies primarily on the investigation report it sent to the plaintiff in response to the notice of dispute, a potential creditor would not see everything that is listed in the investigation report. *See Bibbs*, 2021 WL 695112, at *3. And because the plaintiff attaches the credit report as an exhibit to the complaint, *see* Compl., Ex. B, the court will consider the actual credit report itself in determining the accuracy of Trans Union's reporting. *See Tristate Antiques*, 2017 WL 4539287, at *1 (court may consider exhibits attached to pleadings on motion for judgment on the pleadings).

Here, the plaintiff's credit report indicates that the account: (1) has a zero-dollar balance; (2) a pay status that reads ">Account 60 Days Past Due Date<"; (3) was last updated on December 1, 2013; (4) was last paid on December 1, 2013; and (5) was closed on December 1, 2013. *See* Compl., Ex. B. Reading these entries together, rather than only the payment status line in isolation, the court finds that the only logical conclusion that can be gleaned from the plaintiff's credit report is that the plaintiff was *previously* 60 days past due (*i.e.*, as of December 1, 2013, the date the account was closed). As the court noted in *Gross v. Private National Mortgage Acceptance Company, LLC*, No. 20-CV-4192 (BMC), 2021 WL 81465 (E.D.N.Y. Jan. 9, 2021), "[a]n account with a $0 balance cannot currently be past due—what would the debtor have to pay to bring the account current?" *Id.*, at *3. There, the court concluded that "the only logical inference" for a

transferred account reporting: (1) a pay status of "30 Days Past Due;" (2) a zero-dollar balance; (3) a last payment date of September 2018; and (4) a last updated date of October 2018, was that "the account was *previously* 30 days past due." *Id.*, at *1, *3. Other courts have reached similar conclusions when viewing the credit report as a whole. *See, e.g.*, *Settles*, 2020 WL 6900302, at *4 (account reporting "pay status" as "120 days past due date" was not misleading where payment history showed delinquent payments from May 2013 to January 2014, account as closed in February 2014, and no information past that date); *Hernandez*, 2020 WL 8368221, at *3 ("On its face, the credit report reflects that as of March 8, 2018, the Account (1) *had a balance of $0*; (2) was last updated on March 7, 2016; (3) *was closed on March 7, 2016*; (4) was 120 days past due from October 2015 through March 2016; (5) was settled for less than the full balance; and (6) *had no past due amount*. Objectively, no reasonable creditor looking at the report would be misled into believ[ing] that the plaintiff was 'still late' on the Account.") (emphasis in original).

The plaintiff makes a number of attempts to distinguish the cases above, none of which the court finds persuasive. For example, it argues that *Bibbs*, *Samoura*, and another case cited by Trans Union, *Parke v. Trans Union*, are inapposite because they involved accounts that were transferred, and which did not report a monthly payment obligation. *See* Pl.'s Reply at 5. However, the plaintiff makes no attempt to explain why the distinction between transferred and non-transferred accounts matters. He does not explain, for example, why those courts' approach of reading the credit report as a whole and the logical conclusions to be drawn therefrom do not apply equally to accounts that are not transferred. The plaintiff also notes that the accounts in *Bibbs*, *Samoura*, and *Parke* did not report a monthly payment obligation like the plaintiff's account. *Id.* at 6–7. However, when read in conjunction with the other trade lines, no reasonable creditor would understand the monthly payment notation to indicate a current payment obligation. Indeed, the majority of courts have held

that reporting historical monthly payment amounts on closed accounts with a zero balance is not inaccurate or misleading. *See, e.g.*, *Thomas v. Equifax*, No. 3:19-cv-286, 2020 WL 1987949 (S.D. Ohio Apr. 27, 2020); *Jones v. Equifax Info. Servs., LLC*, No. 2:18-cv-2814-JPM-cgc, 2019 WL 5872516 (W.D. Tenn. Aug. 8, 2019); *Cowley v. Equifax Info. Servs., LLC*, No. 2:18-cv-02846-TLP-cgc, 2019 WL 4936036 (W.D. Tenn. Aug. 12, 2019).

The plaintiff also argues that the court should follow *Smith v. Trans Union, LLC*, 2021 WL 1061213, in which Judge Kenney denied Trans Union's motion for judgment on the pleadings in a case presenting nearly identical facts. *See* Pl.'s Reply at 3–4. In *Smith*, the court found that it could not determine as a matter of law that the credit report was not inaccurate or misleading at the pleading stage because "the phrase '60 Days Past Due' could mislead a creditor to believe the account was never paid off . . . ." *Id.*, at *3. Importantly, however, the court stated that

> [i]t is also not indisputably accurate to say that the notation is a remark on the historical pay status of the account. An historical remark would say something to the effect that "at one time in the past the account was past due," or "paid in full at end when account was 60 days past due," rather than indicating, as it does in this case, "Pay Status: 60 Days Past Due."

*Id.*

Here, the plaintiff's credit report does have such a remark. This remark, which is viewable by potential creditors, says, "Maximum Delinquency of 60 days in 12/2013." When read together with the other trade lines of the credit report, it would be impossible for a potential creditor to believe that the plaintiff's account is currently past due. Although the plaintiff notes that the investigation results themselves say that the pay status field represents the current status of the account, Pl.'s Reply at 8 (citing Ex. A), that explanation would not be viewable to a potential creditor as it is not part of the credit report. *See Bibbs*, 2021 WL 695112, at *3 ("We accept the parties' representation [that] we can determine the accuracy of the report using the investigation

results, but we will not consider provisions of the investigation results a creditor would not see or consider in making a credit decision. For example, we cannot consider the definition of 'Pay Status' in the investigation results . . . .").

c.  **Truist Bank's Motion for Judgment on the Pleadings**

i.  *Judgment on the pleadings as to Truist Bank's statute of limitations defense is denied.*

In its motion for judgment on the pleadings, Truist argues that the plaintiff's claim is barred by the FCRA's two-year statute of limitations. *See* Def. Truist Bank's Mem. of Law in Supp. of its Mot. for Judgment on the Pleadings ("Truist Mem.") at 4, Doc. No. 28-1. It argues that because the plaintiff knew or should have known of the facts giving rise to his claim in August 2018 when he received the results of Trans Union's investigation, his complaint filed on October 20, 2020 is untimely. *See id.* at 5–6. The plaintiff does not respond to Truist's statute of limitations argument as to its claim under 15 U.S.C. § 1681s-2(b), arguing only that the statute of limitations for a claim under § 1681i, which is only asserted against Trans Union, does not begin to run until the plaintiff discovers that the statutorily required reinvestigation was unreasonable. *See* Pl.'s Mem. at ECF pp. 13–14. For the reasons set forth below, the court denies Truist's statute of limitations defense.[4]

The court notes that it is unclear whether the plaintiff is arguing that Truist failed to conduct an investigation at all with respect to the disputed information, or rather that the investigation it did conduct was unreasonable or incomplete. *See* Compl. at ¶ 13 ("BB&T did not provide a good faith investigation into the disputed account of Plaintiff."); ¶ 37 ("Defendant, BB&T, violated its duty under 15 U.S.C. § 1681s-2(b) to conduct a reasonable and good faith investigation into Plaintiff's notice through a dispute letter and failing to delete or correct the inaccurate

---

[4] Because Truist does not specify which FCRA claim is barred by the statute of limitations, the court construes Truist's arguments as applying to 15 U.S.C. § 1681s-2(b), the only claim asserted against it by the plaintiff.

information."). This distinction is important in analyzing whether the statute of limitations bars the plaintiff's claim. If the plaintiff's claim is that Truist failed to complete an investigation at all, then the statute of limitations would have begun to run, at the earliest, on September 14, 2018, or thirty days after the plaintiff sent his dispute on August 14, 2018. This is because a furnisher's duty under § 1681s-2(b) generally arises thirty days after it is notified of a dispute by a credit reporting agency. *See Jenkins v. Chase Bank USA, N.A.*, No. 14-CV-5685 (SJF) (AKT), 2015 WL 4988103, at *7 (E.D.N.Y. Aug. 19, 2015); *see also Johnson*, 558 F. Supp. 2d at 1136 (stating that because liability under § 1681i arises thirty days after a consumer reporting agency receives notice of a dispute, and because § 1681s-2(b)(2) refers to § 1681i's thirty-day reinvestigation period, liability under § 1681s-2(b) "also does not attach until after the expiration of that same reinvestigation period."). Because the complaint was not filed until October 20, 2020, and the plaintiff's claim accrued, at the earliest, on September 14, 2018, the complaint would be time-barred.

If, on the other hand, the plaintiff's claim is not that Truist failed to conduct engage in an investigation at all, but that the one it did perform was unreasonable or incomplete, then it is less clear that the statute of limitations bars the plaintiff's § 1681s-2(b) claim. In *Escobar*, the court held that "according to the plain language of the FCRA, the statute of limitations beg[ins] to run on each portion of [the plaintiff's] claim when she discover[s] each allegedly unreasonable investigation." 2018 WL 1740364, at *6. In that case, the defendant argued that a portion of the plaintiff's § 1681s-2(b) claim was barred by the statute of limitations because the three investigations it conducted giving rise to the plaintiff's claims were conducted more than two years before the plaintiff filed the complaint. *See id.* The plaintiff argued that the limitations period did not begin until she discovered that those investigations were unreasonable, and evidence would

show that she did not know and could not have known what information the defendant had when it conducted those investigations. *Id.* The court declined to dismiss the claim on the ground that it was time-barred, observing that "[t]he Complaint does not allege the date of Plaintiff's discovery that [the defendant] had conducted an unreasonable investigation of the [disputes]. We therefore cannot determine, from the face of the Complaint, whether Plaintiff was aware of [the defendant's] allegedly unreasonable investigations . . . more than two years before she filed the instant Complaint . . . ." *Id.*, at *7.

Here, like in *Escobar*, the complaint does not state when the plaintiff discovered that Truist allegedly conducted an unreasonable investigation. Although the plaintiff states that he sent his dispute letter to Trans Union on August 14, 2018, Compl. at ¶ 11, no further temporal details are provided. For example, the plaintiff merely alleges generally that Truist failed to conduct a "good faith" investigation into his dispute. *See id.* at ¶¶ 13, 37. Although Truist contends that the reinvestigation results were mailed to the plaintiff on August 24, 2018, even assuming the plaintiff received the results and reviewed them, that still does not answer the question of when the plaintiff became aware of the allegedly unreasonable investigation. Under this scenario, because the court cannot determine from the face of the pleadings whether the plaintiff was aware of the allegedly unreasonable investigation conducted by Truist more than two years before he filed the complaint, denial of judgment on the pleadings at this early stage is warranted.

Because it is unclear from the face of the pleadings whether the statute of limitations bars the claim against Truist Bank, the court denies Truist's motion for judgment on the pleadings as to its statute of limitations defense. *See Tozer*, 2014 WL 1378817, at *3.

      ii.   *Judgment on the pleadings is granted as to the plaintiff's claim under*
*§ 1681s-2(b).*

The plaintiff argues that Truist Bank, as a furnisher of credit information under the FCRA, violated its obligations under 15 U.S.C. § 1681s-2(b) "to conduct a reasonable and good faith investigation into Plaintiff's notice through a dispute letter and failing to delete or correct the inaccurate information." Compl. at ¶ 37. In moving for judgment on the pleadings, Truist argues that the plaintiff's claim fails as a matter of law because "no reasonable juror could misinterpret pay status to mean 'current' pay status" under the facts of this case. *See* Truist Mem. at 6. For the reasons set forth below, the court will grant Truist's motion for judgment on the pleadings.

To state a claim under  1681s-2(b), a plaintiff must establish: "(1) that he notified a CRA of the dispute under § 1681i, (2) that the CRA notified the party who furnished the information, and (3) that the party who furnished the information failed to investigate or rectify the disputed charge." *Hoffman v. Wells Fargo Bank, N.A.*, 242 F. Supp. 3d 372, 391 (E.D. Pa. 2017) (quoting *Horsch v. Wells Fargo Home Mortg.*, 94 F. Supp. 3d 665, 672 (E.D. Pa. 2015)) (alteration omitted). Here, the plaintiff alleges—and Truist does not dispute—that he notified the credit reporting agency, Trans Union, of his dispute, and that Trans Union in turn notified Truist Bank. *See* Compl. at ¶¶ 11, 37. The plaintiff's § 1681s-2(b) claim, then, comes down to whether Truist "failed to investigate or rectify the disputed account." *Hoffman*, 242 F. Supp. 3d at 391; *see also* 15 U.S.C. § 1681s-2(b)(1)(A) (requiring furnisher to "conduct an investigation with respect to the disputed information"); § 1681s-2(b)(1)(E) (requiring modification, deletion or blocking of reporting of information found to be "inaccurate or incomplete").

Here, the plaintiff argues both that Truist failed to complete "a reasonable and good faith investigation" into the plaintiff's dispute, Compl. at ¶ 37, and that it failed to "delete or correct" the allegedly inaccurate information. *See id.* Truist does not appear to dispute the "reasonable

investigation" aspect of the plaintiff's claim, arguing only that it is entitled to judgment on the pleadings because the information it furnished was accurate.

As a preliminary matter, the court finds that judgment on the pleadings is warranted as to the portion of the plaintiff's § 1681s-2(b) claim premised on Truist's alleged failure to "delete or correct" inaccurate information because the plaintiff does not allege—nor could he—that Truist discovered any inaccurate or incomplete information during the course of its investigation. That is because, as the court has already determined, the information on the plaintiff's credit report was not inaccurate or misleading. Indeed, in the complaint the plaintiff alleges that Truist "*should have discovered* that the information they are providing the Credit Reporting Agencies was not accurate." Compl. at ¶ 37 (emphasis added). This allegation is fatal to the plaintiff's claim that Truist failed to delete or correct inaccurate information. *See Hoffman*, 242 F. Supp. 3d at 392 ("Because Plaintiff does not allege that Wells Fargo's investigation uncovered any inaccuracy regarding her account, Wells Fargo argues that Plaintiff has failed to state a claim based on its failure to rectify disputed information. I agree. The inquiry therefore narrows to whether Wells Fargo failed to investigate Plaintiff's dispute."); *see also Horsch*, 94 F. Supp. 3d at 673.

Similarly, the court will grant judgment on the pleadings as to the "reasonable investigation" portion of the plaintiff's § 1681s-2(b) claim because, as discussed above, the information on the plaintiff's credit report was not misleading or inaccurate as a matter of law. While courts in this district have stated that liability under § 1681s-2(b) "occurs as a result of an unreasonable investigation, not simply as a result of inaccurate information being reported," *Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 608 n.9 (E.D. Pa. 2008), and Truist does not assert that it conducted a "reasonable investigation," the court finds more persuasive the reasoning of "[c]ourts [that] have explicitly held that a showing of inaccuracy is essential to a

22

§ 1681s-2(b) claim." *Gatanas v. Am. Honda Finance Corp.*, Civ. A. No. 20-07788 (KM) (JBC), 2020 WL 7137854, at *3 n.3 (D.N.J. Dec. 7, 2020) (citing *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 629 (6th Cir. 2018) (collecting cases)).

This "threshold showing of inaccuracy or incompleteness" makes sense because "Section 1681s-2 works in two phases. Initially, furnishers have a duty to provide the [credit reporting agencies] with accurate information about their customers. Later, a furnisher may be asked by a [credit reporting agency] to respond to disputes about the consumer information provided." *Pittman*, 901 F.3d at 629 (quoting *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 614 (6th Cir. 2012)). Additionally, as the court noted in *Gatanas*, under the FCRA, the plaintiff must plead actual damages. *See Gatanas*, 2020 WL 7137854, at *3 n.3 (citing 15 U.S.C. § 1681o(a)(1)). It would be difficult to satisfy the statutory requirement of actual damages—let alone Article III's requirement of actual damages or concrete harm—"if the information at issue was ultimately accurate." *Id.* (citing *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 37–38 (1st Cir. 2010)). Finally, because the "FCRA is intended to protect consumers against the compilation and dissemination of *inaccurate* credit information," *id.* (quoting *Chiang*, 595 F.3d at 37 – 38), it "makes little sense to read [the FCRA's] obligations as providing for a claim independent of any inaccuracy." *Id.*

The court agrees with the reasoning of the court in *Gatanas* and accordingly grants judgment on the pleadings as to the plaintiff's claim that Truist did not conduct a reasonable investigation. As reported, the credit information was not inaccurate or misleading as a matter of law, and the plaintiff has therefore failed to meet the "threshold of inaccuracy or incompleteness" for his section 1681s-2(b) claim. *See Pittman*, 901 F.3d at 629. Additionally, because the plaintiff does not—and could not—allege that Truist discovered any inaccurate or incomplete information during the course of its investigation, judgment on the pleadings is granted as to the aspect of the

plaintiff's section 1681s-2(b) claim alleging that Truist did not delete or correct allegedly incorrect information.

### d.   **The Plaintiff's Cross-Motion for Judgment on the Pleadings**

Because the court has already found that, when read together with the other tradelines, the credit report is not patently incorrect or misleading, the plaintiff's cross-motion for judgment on the pleadings is denied.

## IV.   LEAVE TO AMEND THE COMPLAINT IS DENIED

In his opposition to the defendants' motions for judgment on the pleadings, the plaintiff requests, in the alternative, leave to file an amended complaint. *See* Pl.'s Mem. at ECF. p. 14. This request is denied. "Leave to amend is properly denied if amendment would be futile, i.e., if the proposed complaint could not withstand a renewed motion to dismiss." *City of Cambridge Retirement Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018) (internal quotations omitted). "In assessing futility, the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (internal quotations omitted).

Here, amending the complaint would be futile. As the court has already discussed, the weight of authority holds that an account such as the plaintiff's—which reported a zero-dollar balance, a pay status of "Account 60 Days Past Due Date," and December 1, 2013, as the date the account was last updated, the date the last payment was made, and the date the account was closed—is not inaccurate and would not mislead a reasonable creditor into believing that the account is currently past due. *See, e.g.*, *Settles*, 2020 WL 6900302, at *4; *Hernandez*, 2020 WL 8368221, at *3. Importantly, the parties here do not dispute that the credit report says what it says; their only dispute concerns how the credit report should be interpreted and whether it is patently

incorrect or misleading as a matter of law. As such, there are no additional facts the plaintiff could allege to rectify the complaint's shortcomings and leave to amend is accordingly denied.

## V.        CONCLUSION

The court grants judgment on the pleadings to defendants Trans Union and Truist Bank because the credit information reported on Mr. Ostrander's account was accurate and would not mislead a reasonable creditor. The court denies the plaintiff's partial cross-motion for judgment on the pleadings and request for leave to amend the complaint.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.